UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :        19cv1649 (DLC)
RLI INSURANCE COMPANY,                 :
                          Plaintiff,   :        <u>OPINION AND ORDER</u>
            -v-                        :
                                       :
AST ENGINEERING CORPORATION, CORAL     :
CRYSTAL LLC, FEDERAL INSURANCE         :
COMPANY, MCARTHUR MORGAN, LLC, SEA     :
BREEZE GENERAL CONSTRUCTION, INC.,     :
J.V.C. GROUP N.Y. CORP., PHILIBERT     :
ENGINEERING, P.C., and GRAD URBAN      :
DESIGN, INC.,                          :
                          Defendants.  :
                                       :
-------------------------------------- X

APPEARANCES

For plaintiff:
Timothy Erin Delahunt
Kenney Shelton Liptak & Nowak, LLP
223 Franklin Street
Buffalo, NY 142020
(716) 853-3801

For defendant AST Engineering Corp.:
Robert S. Cosgrove
Durkin & Durkin, LLC
1120 Bloomfield Avenue
West Caldwell, NJ 07006
(973) 244-9969

For defendant Sea Breeze General
Construction, Inc.:
Craig L. Rokuson
Traub Lieberman Straus & Shrewsberry
LLP
7 Skyline Drive
Hawthorne, NY 10532
(914) 347-8898

For defendant J.V.C. Group N.Y. Corp.:
Jerry Anthony Cuomo
Landman Corsi Ballaine & Ford P.C.
1617 JFK Boulevard, Suite 955
Philadelphia, PA 19103
(973) 424-2000

DENISE COTE, District Judge:

RLI Insurance Company ("RLI") issued a claims-based professional liability insurance policy ("Policy") to AST Engineering Corporation ("AST") in March 2013 and has defended AST in two New York State lawsuits, the first of which named AST in October 2013. In September 2016, RLI issued a reservation of rights notifying AST that it may disclaim coverage. On February 23, 2019, RLI filed this action, seeking a declaration that it has no duty to defend AST. Both parties now move for summary judgment. For the reasons that follow, AST's motion for summary judgment is granted and RLI is estopped from disclaiming coverage.

## Background

This action arises from work AST performed in connection with a residential construction project at 133 Third Avenue in Manhattan (the "Project"). As part of its work on the Project's foundation and superstructure, J.V.C. Group N.Y. Corp. ("JVC"), a subcontractor on the Project, requested that AST create a design drawing for a one-sided form for use in pouring a

concrete wall.  AST provided those drawings to JVC on October 28, 2012.

On December 5, 2012, concrete poured at the Project pressed against an adjoining building, bowing and cracking its exterior wall.  As a result of damage, the owner of the adjoining building, Coral Crystal LLC ("Coral Crystal"), filed on December 10, 2012 a lawsuit in New York State Supreme Court (the "Coral Crystal Action") against McArthur Morgan LLC ("McArthur Morgan"), the owner of the Project.  On March 7, 2013, Coral Crystal added JVC and the Project's general contractor, Sea Breeze General Construction, Inc. ("Sea Breeze"), as defendants.

Two weeks later, on March 21, 2013, AST applied to RLI for a claims-based professional liability insurance policy. Although it had been in business since 2009, AST had not carried professional liability insurance prior to that date.  In its application, AST identified its five largest projects as New York-based projects.  It further stated that it had no "knowledge of any incident, act, error, or omission involving professional services that could reasonably be expected to be the basis of a claim" against it.

RLI issued the Policy to AST for the period March 22, 2013 to March 22, 2014.  The Policy states that it "applies to Claim(s) arising from Professional Services rendered worldwide." It provides a maximum of $1 million insurance per claim arising

from a "Wrongful Act" committed by AST's architects and engineers subsequent to the "Retroactive Date."  The Policy identifies the "Retroactive Date" as March 22, 2013.

The Policy states, in pertinent part:

This insurance applies to a Claim for a Wrongful Act to which this insurance applies, only if

. . .

(ii) Such Wrongful Act was committed subsequent to the Retroactive Date(s) stated in Item 6. of the Declarations; and

(iii)     None of the Insured's directors, officers, principals, partners or insurance managers knew or could have reasonably expected that such Wrongful Act might give rise to a Claim, either prior to the inception date of this Policy, or the inception date of an earlier Policy, where this Policy is issued by the Insurer as a continuous renewal or replacement of such earlier policy, issued by the Insurer.

The Policy defines "Wrongful Act" as "a negligent act, error, or omission, in the performance of Professional Services."

AST is a New Jersey professional engineering corporation with its principal place of business in New Jersey.  The Policy lists AST's business address in Matawan, New Jersey and provides that "[n]otice to any Insureds may be given to [AST]" at that address.  RLI delivered the Policy to AST at its New Jersey address and assessed a New Jersey surcharge of $36.00.  At all times since the Policy was first issued to AST, RLI billed its premiums to AST in New Jersey and AST mailed payment of its premiums to RLI from its address in New Jersey.

On October 10, 2013, JVC filed a third-party complaint against AST for common-law indemnification and contribution, breach of contract, and professional malpractice in connection with the engineering services it provided on the Project.  The third-party complaint alleges, in relevant part:

> 6.    That [Coral Crystal's] complaint for damage arises from construction at 133 Third Avenue, New York, New York, property adjacent to [Coral Crystal's] property located at 129 Third Avenue, New York, New York. . . .
>
> . . .
>
> 8.    That at all relevant times herein, AST served as an engineer for JVC with respect to the work at the aforementioned location, which included an AST design for concrete placement dated October 28, 2012.  See design plan annexed hereto as Exhibit "D."

With respect to the breach of contract allegations in particular, the third-party complaint further alleges:

> 13.    That pursuant to an agreement, AST agreed to provide certain professional engineering services relating to construction at 133 Third Avenue, New York, New York, which included, but was not limited to, conducting site inspections, providing certified design drawings and engineering services concerning the pouring of concrete.
>
> 14.    That AST breached its agreement to provide adequate engineering services.

On October 28, 2013, AST notified RLI by email of the Coral Crystal Action and the third-party claim against AST.  By a separate email to RLI that same day, AST asked that RLI select Scott Winikow of Donovan Hatem LLP to represent AST.  Despite

this request, RLI elected to retain Milber Makris Plousadis & Seiden, LLP to defend in the Coral Crystal Action.

On August 10, 2015, Federal Insurance Company ("Federal Insurance") commenced a subrogation action in New York State Supreme Court (the "Federal Insurance Action") against McArthur Morgan, Sea Breeze, and JVC, among others. Federal Insurance did not sue AST.

On September 21, 2016, almost three years after AST notified RLI of the Coral Crystal action, RLI issued a reservation of rights letter to AST. It states, in pertinent part:

> The Coral Crystal action remains in written discovery.
> However, information generated in the course of the
> action and provided to RLI reflects the possibility
> that the "Wrongful Act" for purposes of coverage under
> the RLI policy was AST's creation of certain drawings
> on October 28, 2012. If so, this would predate the
> policy's Retroactive Date of the RLI policy [sic], and
> therefore place the claim outside the scope of the RLI
> policy. Accordingly, RLI must reserve its rights to
> deny coverage for AST in connection with Crystal Coral
> [sic]. However, subject to this reservation of
> rights, RLI will continue to defend AST.

On October 6, 2016, JVC impleaded AST into the Federal Insurance Action. JVC's allegations against AST in the Federal Insurance Action are substantially the same as those alleged in its third-party complaint against AST in the Coral Crystal Action. On November 23, 2016, RLI issued a supplemental reservation of rights for the Federal Insurance Action.

On February 23, 2019, RLI filed this action for a
declaration that it has no obligation to defend or indemnify AST
in connection with either the Coral Crystal Action or the
Federal Insurance Action.  RLI and AST cross moved for summary
judgment on September 27; JVC and Sea Breeze joined in AST's
motion on October 18.[1]  The motions became fully submitted on
November 1.

## Discussion

Summary judgment may not be granted unless all of the
submissions taken together "show[] that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).
"Summary judgment is appropriate when the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party."  Smith v. Cty. of Suffolk, 776 F.3d 114, 121
(2d Cir. 2015) (citation omitted).  The moving party bears the
burden of demonstrating the absence of a material factual
question, and in making this determination, the court must view
all facts in the light most favorable to the non-moving
party.  See Eastman Kodak Co. v. Image Techn. Servs., Inc., 504

---

[1] By stipulation of June 6, 2019, this action was discontinued as
against defendants Federal Insurance, McArthur Morgan, Philibert
Engineering, P.C., and Grad Urban Design, Inc.

U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, "the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment," Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted), as is "mere speculation or conjecture as to the true nature of the facts." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

RLI and AST dispute which law governs RLI's duty to defend AST. RLI contends that, under New York law, the claims against AST do not fall within the scope of claims covered by the

Policy.  AST asserts that, under New Jersey law, the Policy's retroactivity provision violates New Jersey public policy and, in the alternative, that RLI is estopped from disclaiming coverage under the Policy because it failed to timely and properly issue a reservation of rights.  For the reasons that follow, New Jersey law controls this dispute and RLI is estopped from disclaiming coverage under the Policy.

I.  Choice of Law

    "A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state."  Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012).  Under New York law, "the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved."  Id.  If there is a conflict of law, "New York looks to the 'center of gravity' of a contract to determine choice of law."  AEI Life LLC v. Lincoln Benefit Life Co., 892 F.3d 126, 135 (2d Cir. 2018) (citation omitted).  "Under this approach, [a] spectrum of significant contacts -- rather than a single possibly fortuitous event -- may be considered."  Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 822 F.3d 620, 642 (2d Cir. 2016) (citation omitted).  Among these contacts are "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of

business of the contracting parties." <u>AEI</u>, 892 F.3d at 132 (citation omitted).  In the insurance context, the place of contracting is where the insurance policy is delivered to the insured.  <u>U.S. Mortg. & Tr. Co. v. Ruggles</u>, 258 N.Y. 32, 38 (1932).  The place of performance is where the premiums are billed and a claim on the policy is made.  <u>AEI</u>, 892 F.3d at 135. The purpose of the "center of gravity" approach "is to establish which State has the most significant relationship to the transaction and the parties."  <u>In re Liquidation of Midland Ins. Co.</u>, 16 N.Y.3d 536, 543-44 (2011) (citation omitted).

In the context of liability insurance contracts, "the jurisdiction with the most significant relationship to the transaction and the parties will generally be the jurisdiction which the parties understood was to be the principal location of the insured risk unless[,] with respect to the particular issue, some other jurisdiction has a more significant relationship." <u>Id.</u> at 544 (citation omitted).  Where an insurance policy covers risks located in two or more states, however, "it is commonplace for courts applying New York choice-of-law rules to disregard (or at least discount) the location of the insured risk." <u>Schwartz v. Liberty Mut. Ins. Co.</u>, 539 F.3d 135, 152 (2d Cir. 2008) (citation omitted).  In such cases, "the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk."  <u>Fireman's Fund</u>, 822

F.3d at 642 (quoting Underwriters at Lloyd's, London v. Foster Wheeler Corp., 822 N.Y.S.2d 30, 37 (App. Div. 1st Dept. 2006)). This approach "promotes certainty, predictability and uniformity of result," Midland, 16 N.Y.3d at 544 (citation omitted), because "the state of the insured's domicile is a fact known to the parties at the time of contracting, and application of the law of that state is most likely to conform to their expectations." Fireman's Fund, 822 F.3d at 642 (citation omitted).

The parties agree that an actual conflict exists between the laws of New York and New Jersey. This conflict concerns, among other things, the circumstances in which an insurer may be estopped from denying coverage to an insured party. Under New York law, for example, an insurer that delays issuing a reservation of rights may be estopped from later denying coverage only if the insured party can prove it was prejudiced by the delay. Federated Dept. Stores, Inc. v. Twin City Fire Ins. Co., 807 N.Y.S.2d 62, 68 (App. Div. 1st Dept. 2006). New Jersey law, by contrast, does not require the insured party to prove prejudice. Griggs v. Bertram, 88 N.J. 347, 357 (1982). Instead, prejudice is ordinarily presumed where the insured "is denied the right to maintain complete control of the defense." Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 129 (1962).

The Policy is governed by New Jersey law. AST is domiciled

in New Jersey and is a licensed professional corporation in two
states, New Jersey and New York.  The Policy, which includes a
New Jersey surcharge, was delivered to AST at its New Jersey
address.  RLI sent its bills to AST's New Jersey address and AST
mailed payment of its premiums from its New Jersey office.
Moreover, the Policy covers claims for professional services
"rendered worldwide."  AST's domicile of New Jersey may
therefore be regarded as a proxy for the principal location of
the risk insured by the Policy.  See Fireman's Fund, 822 F.3d at
642.

RLI argues that New York law should govern this dispute
because the Project is located in New York and, accordingly, the
underlying litigation as to liability is occurring in New York.
It emphasizes that the Policy did not contain any New Jersey-
specific endorsements (aside from the surcharge) and that each
of RLI's five largest projects in the three years prior to its
application were New York projects.  Relying on Worth Constr.
Co. v. Admiral Ins. Co., 836 N.Y.S.2d 155 (App. Div. 1st Dept.
2007), rev'd on other grounds, 10 N.Y.3d 411 (2008), RLI claims
that AST's domicile should not be regarded as a proxy for the
principle location of the insured risk under these
circumstances.

RLI's arguments miss the mark.  First, RLI's emphasis on
the site of the Project and the location of the underlying

litigation "confuses the contacts that might be significant in a tort case with those that are material in a contract dispute." In re Allstate Ins. Co. (Stolarz), 81 N.Y.2d 219, 228 (1993). This action does not address the merits of AST's defenses in the Coral Crystal or Federal Insurance Actions; it is merely a dispute over who must bear the costs of the defense. The question of whether RLI must defend and indemnify AST is purely one of contract. It does "not depend on the law of the jurisdiction governing [the underlying litigation] but rather . . . [on] the law governing the interpretation of the insurance policy and its issuance." Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 155 (2d Cir. 2003) (citation omitted). Indeed, New York's "center of gravity" approach seeks to avoid rendering a choice-of-law determination based on a "fortuitous event" unknown to the parties at the time of contracting. Fireman's Fund, 822 F.3d at 643. Because parties cannot always predict the site of an accident or the forum of the underlying litigation, those contacts "bear little weight" under New York's choice-of-law analysis. See Foster Wheeler, 822 N.Y.S.2d at 32 (citation omitted).

Second, RLI's reliance on Worth is misplaced. In Worth, the Appellate Division considered whether New York or New Jersey law should govern an insurance contract issued to a New Jersey corporation where the accident giving rise to the claim occurred

13

on a New York construction site and the principle defendants
were sued in New York state court.  836 N.Y.S.2d at 156.
Although the insured was domiciled in New Jersey, the court
declined to apply the now-prevailing rule that the state of the
insured's domicile should be regarded as a "proxy" for the
principle location of the insured risk.  Id. at 156-57.  As this
Court explained in Travelers Cas. & Sur. Co. v. Dormitory Auth.,
however, the insurance policy in Worth covered a general
contractor as an additional insured "'for liability arising out
of' a specifically identified New York construction project."
No. 07cv6915(DLC), 2008 WL 4861910, at *5 (S.D.N.Y. Nov. 5,
2008) (quoting Worth, 836 N.Y.S.2d at 156).  While it is
undisputed that AST operates in only two states, the coverage
provided in the Policy is "worldwide" and not specific to the
site of any particular project or even to projects occurring
only in the two states where AST is licensed.  Accordingly,
Worth does not alter the conclusion that New Jersey law governs
this case.

II.  Estoppel

RLI seeks a declaration that the claims against AST are
outside the scope of the Policy either because the alleged
"Wrongful Act" occurred prior to the policy's retroactive date
of March 22, 2013 or because AST knew of the potential claims
prior to its application for insurance on March 21, 2013.  AST

argues that RLI is estopped from denying coverage because RLI did not timely and properly reserve its right to deny coverage. AST is correct.

Under New Jersey law, it is well established that "[c]ontrol of [an insured's] defense is vitally connected with the obligation to pay the judgment." Merchants, 37 N.J. at 127. "[J]ust as a carrier would hardly agree to pay a judgment after defense by the insured, so it cannot expect the insured to pay for a judgment when it controlled the litigation." Nazario v. Lobster House, 2009 WL 1181620, at *4 (N.J. App. Div. May 5, 2009) (citation omitted). Accordingly, "[i]f an insurer wishes to control the defense and simultaneously reserve a right to dispute liability, it can do so only with the consent of the insured." Id. at *5 (citation omitted). An insurer may obtain the insured's consent only if it timely "reserve[s] the issue of its liability by appropriate measures." Merchants, 37 N.J. at 126.

When an insurer receives a claim or notice of an incident that may give rise to a claim, it is entitled to "a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy." Griggs, 88 N.J. at 357. "But once an insurer has had a reasonable opportunity to investigate, or has learned of grounds for questioning coverage, it then is under a duty promptly to

15

inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned." Id. The "classic mode" by which an insurer may reserve its rights and obtain consent to control the litigation is through a nonwaiver agreement between the insured and the insurer.[2] Merchants, 37 N.J. at 126. In the absence of a nonwaiver agreement, "[a]greements may be inferred from an insured's failure to reject an offer to defend upon those terms, but to spell out acquiescence by silence, the letter must fairly inform the insured that the offer may be accepted or rejected." Nazario, 2009 WL 1181620, at *5 (emphasis and citation omitted); see also Sneed v. Concord Ins. Co., 98 N.J. Super. 306, 314 (App. Div. 1967).

An insurer that fails to reserve properly its rights within a reasonable time will be estopped from later denying coverage on the ground that the policy does not cover the loss alleged, even if the insured has not established that it has been prejudiced. Griggs, 88 N.J. at 357; Merchants, 37 N.J. at 129; cf. Sussex Mut. Ins. Co. v. Hala Cleaners, Inc., 75 N.J. 117, 125 (1977) ("[O]nce a carrier undertakes to defend, it is

---

[2] A nonwaiver agreement is "[a] contract (supplementing a liability-insurance policy) in which the insured acknowledges that the insurer's investigation or defense of a claim against the insured does not waive the insurer's right to contest coverage later." Nonwaiver Agreement, Black's Law Dictionary (11th ed. 2019).

estopped to deny coverage."). Although "prejudice is an essential ingredient of estoppel[,] . . . prejudice is inevitable when the insured is denied the right to maintain complete control of the defense of the damage action." Griggs, 88 N.J. at 358 (citation omitted). Accordingly, in most cases where an insurer fails to properly reserve its rights in a timely manner, "appropriation of control over the claim by the insurer establishes prejudice to the insured as a matter of law." Sneed, 98 N.J. Super. at 317; see also Griggs, 88 N.J. at 362 (imputing prejudice to the insured where "[i]t would be speculative, unproductive and unfair" to try to recreate what steps the insured might have taken on its own).

RLI is estopped from denying coverage on the ground that AST's claim falls outside the scope of the Policy. Since at least October 2013, RLI knew or should have known that the alleged "Wrongful Act" occurred prior to the Policy's March 22, 2013 retroactive date. RLI received a copy of JVC's third-party complaint in the Coral Crystal Action on October 28, 2013. That complaint asserts multiple claims against AST arising from an AST design for concrete placement dated October 28, 2012. It knew as well that JVC was sued by Coral Crystal on March 7, 2013, just two weeks before AST, which had no other professional liability insurance, sought professional liability insurance from RLI. An insurer with knowledge of these facts had grounds

to question whether AST's claim fell within the scope of the
Policy.  RLI's duty to inform AST that it might disclaim
coverage arose no later than that date.

Notwithstanding its awareness of grounds for questioning
coverage, RLI failed to issue any reservation of rights until
September 21, 2016, which was almost three years later.  That
reservation of rights raised only one of the two bases for
denying coverage that are asserted here -- whether the "Wrongful
Act" occurred prior to the retroactive date.[3]  RLI's nearly
three-year delay in reserving its right to disclaim coverage is
unreasonable and presumptively prejudicial.  See Griggs, 88 N.J.
at 362 (eighteen-month delay unreasonable); Bonnett v. Stewart,
68 N.J. 287, 294 (1975) (four-month delay a question for the
jury where no defense was actually undertaken); Merchant, 37
N.J. at 125-26, 31-32 (nine-month delay unreasonable).  Although
AST has not identified any deficiency in its current counsel,
the inevitability of prejudice is especially apparent here,
where RLI declined AST's request for the appointment of Scott

---

[3] RLI has yet to reserve its right to deny coverage on the ground
that AST knew that JVC might assert a third-party claim based on
AST's engineering work or on the ground that AST's claim for
coverage is barred by the known-loss doctrine.  Given that
nearly six years has elapsed since RLI first learned the core
facts that would support this claim, its delay in reserving its
rights on these grounds is a fortiori unreasonable.

Winikow as counsel for AST.

RLI's September 21, 2016 reservation of rights was also defective.  It failed to apprise AST that its offer of representation could be accepted or rejected.  Nazario, 2009 WL 1181620, at *5 (emphasis omitted).  The September 21 letter stated, "[S]ubject to this reservation of rights, RLI will continue to defend AST."  (Emphasis added.)  While New Jersey courts have not required insurers to use any particular formulation to obtain an insured's consent, a proper reservation of rights may not reflect "a unilateral decision by [the insurer]."  Kaplan v. Harleysville Ins. Co. of N.J., 2007 WL 1670888, at *5 (N.J. App. Div. June 12, 2007) (comparing proper and improper reservations of rights).  An insurer's statement that it "will continue to investigate this matter, but reserves any and all of its rights [to disclaim coverage]," is insufficient under New Jersey law.  Id. (quoting Sneed, 98 N.J. Super. at 314).  Accordingly, RLI is estopped from repudiating its obligations under the Policy.[4]

III.  Leave to Amend

RLI states that, if its motion for summary judgment is denied, it will move to amend its complaint to add claims that

---

[4] Because RLI is estopped from disclaiming coverage under the Policy, it is unnecessary to reach whether the retroactivity clause in the Policy should be stricken as violative of New Jersey public policy.

AST procured the Policy through fraud.  Construing RLI's argument as a motion for leave to amend, the motion is denied as futile.

Although leave to amend under Rule 15 "shall be freely given as justice so requires," Fed. R. Civ. P. 15(a), it is well established that "[l]eave to amend may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018) (citation omitted).  Where an insurer seeks to disclaim coverage based on fraud in the inception of the coverage, the doctrine of waiver -- rather than estoppel -- provides the rule of decision.  See Merchants, 37 N.J. at 130. "[I]f a carrier receives information suggesting fraud or breach of contract, it must seek the facts with reasonable diligence, and having acquired them it must within a reasonable period decide whether to continue to perform."  Id. at 131.  An insurer's failure to do so constitutes an election to affirm, rather than rescind, the policy at issue.  Id. at 131-32.

RLI has waived any claim that AST procured the Policy through fraud.  As discussed above, RLI was on notice of the key facts that would have alerted a reasonably diligent insurer to a potential claim of fraud nearly six years ago.  While RLI argues that it only recently learned that AST in fact knew of the Coral Crystal Action prior to applying for insurance, it is not

necessary for RLI to have had access to every piece of evidence that suggests fraud by AST.  RLI failed to exercise reasonable diligence in its investigation of AST's claim and failed to timely and properly reserve its rights as required by New Jersey law.  Accordingly, RLI's conduct constitutes an election to affirm the policy and waive any claim of fraud.  See <u>Merchants</u>, 37 N.J. at 131.[5]

IV.  Attorneys' Fees

AST moves for an award of attorneys' fees under New Jersey Rule of Court 4:42-9(a)(6) ("Rule 9(a)(6)").  Rule 9(a)(6) provides that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except . . . [i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."  (Emphasis omitted.)  A "successful claimant" is defined as a party that "obtains a favorable adjudication on the merits on a coverage question as the result of the expenditure of counsel fees."  <u>Occhifinto v. Olivo Constr. Co., LLC</u>, 221 N.J. 443, 451 (2015) (citation omitted).

Even where a successful claimant moves for attorneys' fees, the award of counsel fees is "not mandatory."  <u>Passaic Valley</u>

---

[5] In addition, RLI asserts that it will move to amend its complaint to add a claim that JVC's third-party claim against AST was made prior to the inception of the Policy period.  To the extent this argument reflects RLI's position that AST's claim falls outside the scope of the Policy, the request for leave to amend is denied for the reasons discussed above.

<u>Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.</u>, 206 N.J. 596, 619 (2011). Rather, "the trial judge has broad discretion as to when, where, and under what circumstances counsel fees may be proper and the amount to be awarded." <u>Id.</u> (citation omitted). "Since equitable principles govern the trial court's decision, the court should consider the totality of the circumstances in awarding counsel fees." <u>Id.</u> (citation omitted).

AST is not entitled to attorneys' fees under Rule 9(a)(6). Although AST prevailed as to RLI's obligation to provide coverage under the Policy, the record reflects a substantial likelihood that AST knew of the factual basis for the claims against it before it applied to RLI for insurance and procured the Policy through fraud. Equity does not support an award of attorneys' fees.

## Conclusion

RLI's motion for summary judgment is denied. AST's cross-motion for summary judgment is granted. RLI's request for leave

to amend is denied to the extent addressed in this Opinion.

AST's request for attorneys' fees is denied.


Dated:     New York, New York
           December 20, 2019

                        _____
                             DENISE COTE
                     United States District Judge